1  Carlton J. Willey (CA Bar No. 269120)
   WILLEY & BENTALEB LLP
2  One Market Street, Steuart Tower Suite 500
   San Francisco, CA 94105
3  Phone: (415) 426-7111
   Fax: (415) 276-1737
4  Carlton@WBLawPartners.com

5  *Attorney for Plaintiff*

6  *Torrey Point Group LLC*

7

8

9                 **UNITED STATES DISTRICT COURT**

10              **NORTHERN DISTRICT OF CALIFORNIA**

11  TORREY POINT GROUP LLC,              CASE NO.
    a Delaware Limited Liability
12  Company;                            JUDGE:        CV13-05113

13  Plaintiff                           **COMPLAINT FOR:**

14  vs.                                 1)   **BREACH OF CONTRACT
                                             (MASTER SERVICES
15  RAZOR, INC.,                             AGREEMENT)**
    a Pennsylvania Corporation;         2)   **BREACH OF CONTRACT (UNPAID
16                                           INVOICES)**
17  SAGO NETWORKS, LLC,                 3)   **BREACH OF CONTRACT
    a Florida Limited Liability Company;     (PERSONAL GUARANTY)**
18                                      4)   **UNFAIR BUSINESS PRACTICES**
19  MR. MATTHEW KELLY,                  5)   **INTENTIONAL
    an individual;                           MISREPRESENTATION (FRAUD)**
20
21  MR. JOHN ZETTLEMOYER,
    an individual;
22
23  Defendants.

24

25  Plaintiff Torrey Point Group LLC ("Plaintiff") hereby complains and alleges as follows:

26                    **JURISDICTION AND VENUE**

27  1.     This Court has subject matter jurisdiction over the matter pursuant to 28 U.S.C. §

28  1332(a), as the amount in controversy exceeds $75,000, and Torrey Point Group LLC,

Razor, Inc. and Sago Networks, LLC are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2.    This Court has personal jurisdiction over each of the defendants in this matter, as the transactions and occurrences that are the subject matter of this Complaint arose out of Defendants' business relations and transactions with Plaintiff in California, as described herein. Defendants' contacts with Plaintiff in California were purposeful and substantial, such that Defendants should reasonably anticipate being called into court in California. Specifically, all of the contracts mentioned herein were made by Defendants with Plaintiff, a company doing business in Santa Clara County, California, for delivery of goods shipped from Plaintiff's location in California.

3.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this Complaint occurred in Santa Clara County, California.

## INTRADISTRICT ASSIGNMENT

4.    Pursuant to Civil. L.R. 3-2(e), this case is suitable for assignment in the San Jose division, because the events and omissions giving rise to this action occurred in Santa Clara County, California.

## PARTIES

5.    Plaintiff Torrey Point Group LLC ("Torrey Point" or "Plaintiff") is a Delaware Limited Liability Company with headquarters at 1390 Borregas Ave., Sunnyvale, California 94089, in Santa Clara County.

6.    Defendant Razor, Inc. ("Razor") is a Pennsylvania Corporation with headquarters at 1309 Nobel Street, Philadelphia, Pennsylvania 19123.  Upon information and belief, Razor was acquired in June 2013, by Defendant Sago Networks LLC, but continues to operate its business at the above address.

7.    Defendant Sago Networks LLC ("Sago") is a Florida Limited Liability Company with headquarters at 4465 W. Gandy Blvd, Tampa, Florida 33611.

8.    Defendant Matthew Kelly is an individual and is and was at all relevant times President

2

**COMPLAINT**

of Razor.

9. Defendant John Zettlemoyer is an individual and is and was at all relevant times Chief Technology Officer of Razor, and is now the Vice President of Managed Services at Sago Networks, LLC.

**GENERAL ALLEGATIONS**

10. On or about April 12, 2012, Defendant Matthew Kelly of Razor placed an order with Torrey Point Group LLC for equipment totaling $29,867.00. Defendant Kelly placed the order by sending Purchase Order # DSC-SM-001, which is attached hereto and incorporated herein as Exhibit A.

11. Torrey Point shipped the goods from California pursuant to Purchase Order # DSC-SM-001 and confirmed receipt of the goods by Razor. Despite receipt of the goods and subsequent invoices, Razor has failed to make payment for the goods.

12. Razor sought to purchase additional goods from Torrey Point in December 2012, but this time Torrey Point refused to ship additional goods unless Razor would agree to sign a Master Agreement and unless Matthew Kelly in his personal capacity would provide a Personal Guaranty to ensure payment.

13. On or about December 10, 2012, Defendant Matthew Kelly, in his capacity as President of Razor, delivered to Torrey Point in California a Purchase Order for equipment totaling $216,982.00. Defendant Kelly placed the order by sending Purchase Order # RS-TP-00010, which is attached hereto and incorporated herein as Exhibit B.

14. On or about December 14, 2012, Defendant Matthew Kelly, in his capacity as President of Razor, delivered to Torrey Point in California a fully executed Master Agreement, including a Hardware/Software Purchase Agreement, Professional Services Agreement, a Time and Material Services Agreement, and a Managed Services and Support Agreement, each of which was initialed by Matthew Kelly. The Master Agreement, as well as the above agreements that are exhibits to the Master Agreement, are attached hereto and incorporated herein as Exhibit C.

15. On or about December 14, 2012, Defendant Matthew Kelly, in his personal capacity,

3

**COMPLAINT**

delivered to Torrey Point in California a Personal Guaranty, in order to guarantee payment on Purchase Orders # DSC-SM-001 and # RS-TP-00010, and to induce Torrey Point to ship the desired goods from California.  The Personal Guaranty delivered on December 14, 2012 is attached hereto and incorporated herein as Exhibit D.

16.  Upon receipt of the Master Agreement and Personal Guaranty, Torrey Point shipped the goods from California pursuant to Purchase Order #RS-TP-00010 and confirmed receipt of the goods by Razor.  Despite receipt of the goods and subsequent invoices, Razor failed to make payment for the goods.

17.  In response to Razor's failure to make payment, Torrey Point employees followed up with numerous emails, invoices, and spreadsheets, detailing the exact equipment that was ordered by Razor, and demanding payment from Razor for the equipment.

18.  On April 15, 2013, John Zettlemoyer, CTO of Razor, stated in an email to three Torrey Point executives, "Matt [Defendant Matthew Kelly] entered those payments this morning to go out in the next day or so."

19.  In fact, Razor never sent a payment.  On May 8, 2013, Torrey Point Vice President Steve Jackson informed Razor CTO John Zettlemoyer that "As of today we have not received any payments in 2013."  Zettlemoyer responded that "a check was sent."  In fact, no check was sent and Torrey Point has yet to receive any payment pursuant to either Purchase Order.

20.  On May 31, 2013, Torrey Point Vice President Steve Jackson informed Razor CTO John Zettlemoyer that "We have not received a payment from you for the last 6 months . . . please confirm your intentions."  Zettlemoyer did not reply.

21.  On June 25, 2013, Torrey Point Vice President Steve Jackson informed Razor CTO John Zettlemoyer that "We are expecting payment . . . please provide a response on your actions."  Zettlemoyer did not reply.

22.  On July 30, 2013, Torrey Point Vice President Steve Jackson informed Razor CTO John Zettlemoyer that "We need this settled.  Please assist in getting this paid."  Zettlemoyer replied "Sago Network is the owner of Razor Servers now.  You will need to contact

4

**COMPLAINT**

them."

23.   Despite repeated attempts to contact Sago regarding the outstanding invoices, Sago has similarly refused to make payment on the invoices.

24.   Razor and/or Sago are currently in possession of all the equipment purchased under Orders # DSC-SM-001 and # RS-TP-00010.

**FIRST CAUSE OF ACTION**
**Breach of Contract (Master Agreement)**
**(Against Razor, Inc., and Sago Networks, LLC)**

25.   Plaintiff hereby incorporates all of the preceding paragraphs as if fully set forth herein.

26.   Defendant Razor entered into a written contract, the Master Agreement, with Plaintiff on or about December 13, 2012. A true and correct copy of the contract with its incorporated Exhibits is attached hereto and incorporated by reference as Exhibit A. The Master Agreement states "Payment Terms" as follows:

> "Payment terms for this transaction shall be Net 90 paid in full, based on a completed credit application signed by an owner, and a personal guarantee signed by an owner . . . Customer agrees to pay a late payment fee equal to 2.0% per month on payments in arrears for more than 10 days. If payment is note [sic] received within 120 days, Torrey Point may choose to 1) collect from funds directly from owner based on its rights in the personal guarantee, 2) collect all equipment returned in original packaging, less a 20% restocking fee, or 3) take a preferred stock interest in the company as a percentage based on the following calculation, Price of Order divided by Book Value, not to be less than 20% or to exceed 75%." See Exhibit A, p. 1.

27.   Plaintiff fulfilled all of its obligations under the contract with Razor by supplying Razor with equipment and goods pursuant to Razor's Purchase Orders, as detailed in Plaintiff's Second Cause of Action.

28.   Failure to make payment on overdue invoices by Defendant Razor and Defendant Sago is

5

**COMPLAINT**

a material breach of the Master Agreement.

29. Plaintiff has, on numerous occasions, informed Defendant Razor and Defendant Sago that their absolute unwillingness to pay for purchased equipment is a breach of the Master Services Agreement. Nonetheless, both Defendant Razor and Defendant Sago refused to make payment.

30. As a direct and proximate result of the breach of contract by Defendant Razor and Defendant Sago, Plaintiff has been injured in an amount to be determined at trial but totaling at least $233,331.41, plus monthly interest on invoiced amounts per the Master Services Agreement, from the due date of each invoice, as well as pre-judgment interest at the legal rate.

31. Pursuant to the written terms of the Master Services Agreement, Defendants Razor and Sago Networks, shall pay all costs, expenses, and attorney's fees incurred in the enforcement the Master Services Agreement. Section 9.4 states: "Customer will pay all of Torrey Point's costs or expenses, including reasonable attorney's fees, incurred in enforcing this Agreement." See Exhibit A, Sec. 9.4.

32. Plaintiff is entitled to reasonable attorneys fees it has incurred and will incur in connection with this dispute in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**Breach of Contract (Unpaid Invoices)**
**(Against Razor, Inc., and Sago Networks, LLC)**

33. Plaintiff hereby incorporates all of the preceding paragraphs as if fully set forth herein.

34. The Master Services Agreement states, "All invoices are due and payable 30 days from the date of invoice." See Exhibits A, B, C and D of the Master Services Agreement (Exhibit C) under "Payment Terms."

35. Both Purchase Orders sent to Plaintiff by Defendant Razor, Inc., attached hereto as Exhibits A and B, are written contracts executed by Defendant Matthew Kelly on behalf of Defendant Razor.

36. Plaintiff fulfilled all of its obligations under the Purchase Order contracts with Defendant Razor by shipping the purchased equipment and goods to Razor and/or Sago Networks.

With each shipment, Plaintiff sent invoices on terms of net 30, which invoices are attached hereto as Exhibit E.

37.  Plaintiff has requested on several occasions that Razor and Sago pay the full amount of this invoice.  Razor and Sago have failed to do so. Accordingly, Defendants Razor and Sago have breached the agreement with Plaintiff by failing to pay this amount.

38.  As a direct and proximate result of the breach of the Purchase Order contracts by Defendant Razor, Inc. and Defendant Sago Networks, Plaintiff has been injured in an amount to be determined at trial but totaling at least $233,331.41, plus monthly interest on invoiced amounts per the Master Services Agreement, from the due date of each invoice, as well as pre-judgment interest at the legal rate.

39.  Plaintiff is entitled to reasonable attorney's fees it has incurred and will incur in connection with this dispute in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### Breach of Contract (Personal Guaranty)
### (Against Matthew Kelly)

40.  Plaintiff hereby incorporates all of the preceding paragraphs as if fully set forth herein.

41.  To induce Plaintiff to furnish the above-described equipment to Defendant Razor Inc., and now Defendant Sago Networks, Defendant Matthew Kelly executed a Personal Guaranty ("the Guaranty") in favor of Plaintiff in which he agreed to personally guaranty the obligations under the Master Agreement and the Purchase Orders placed pursuant to the Master Agreement. A true and correct copy of the Guaranty is attached hereto as part of Exhibit D and incorporated by reference as though fully set forth herein.

42.  By virtue of the above, Defendant Matthew Kelly as guarantor is indebted to Plaintiff in a sum to be determined at trial but totaling at least $233,331.41, plus monthly interest on invoiced amounts per the Master Services Agreement, from the due date of each invoice, as well as pre-judgment interest at the legal rate.

43.  The Guaranty also provides for the payment of costs and expenses, including attorney's fees should legal action be instituted to enforce the payment thereof.  As stated in Paragraph Two of the Guaranty:

7

The undersigned also hereby agree to be liable, jointly and severally, for all costs and expenses, including attorneys' fees, incurred by the Vendor in connection with the enforcement of this guaranty, the enforcement of the Customer's obligations arising under or relating to the sale of hardware from the Vendor to the Customer, and the collection of the amounts due under this guaranty or under the sale of hardware (including monetary obligations incurred during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding).

Therefore, Defendant Mr. Matthew Kelly, in his personal capacity, is liable for all attorney's fees that Plaintiff is forced to expend in order to bring this suit and recover the amounts owed by Defendants Razor and Sago, in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### Unfair Business Practices in Violation of Cal. Bus. and Prof. Code § 17200 et seq.
### (Against All Defendants)

44. Plaintiff hereby incorporates all of the preceding paragraphs as if fully set forth herein.

45. Defendants, and each of them, engaged in the following unfair business practices, unlawful and/or fraudulent conduct:

   a. Fraud regarding the payment of invoices.   Specifically, Defendants made statements described above regarding the action of payment—ensuring Plaintiff that payment had been sent—when such statements were known by Defendants to be untrue.

   b. Breach of contract, as alleged herein.

46. The conduct of Defendants, as alleged above, constitutes unlawful, unfair and fraudulent business acts and practices prohibited by Business and Professions Code section 17200, and said unlawful, unfair and fraudulent conduct directly harmed Plaintiff.

47. As a direct and proximate result of Defendants' illegal activities, Plaintiff has suffered

8

damages in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
**Intentional Misrepresentation (Fraud)**
**(Against Defendant Razor, Inc. and Defendant John Zettlemoyer)**

48. Plaintiff hereby incorporates all of the preceding paragraphs as if fully set forth herein.

49. As described in Paragraphs 18 and 19, above, Defendant Zettlemoyer made false statements to Plaintiff that payments that had been sent to Plaintiff.

50. The statements of Defendant Zettlemoyer were intentional misrepresentations of material facts known to Defendant Zettlemoyer, and the fraudulent statements were made with the intent to deceive Plaintiff, and deprive Plaintiff of property.  The statements of Defendant Zettlemoyer therefore are a violation of Civil Code § 3294(c)(3).

51. As a direct and proximate result of Defendant Mr. Zettlemoyer's fraudulent conduct, Plaintiff has suffered damage, including but not limited to monetary damages.

52. In doing the acts herein alleged, Defendant Mr. Zettlemoyer acted with oppression, fraud, malice, and in conscious disregard of the rights of Plaintiff, and Plaintiff is therefore entitled to punitive damages in an amount according to proof at the time of trial.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff seeks judgment against all Defendants jointly and severally as follows:**

1.    For general damages according to proof;

2.    For special damages according to proof;

3.    For statutory pre-judgment interest at the legal rate;

4.    For punitive or exemplary damages pursuant to Cal. Civil Code Section 3294;

5.    For restitution and/or disgorgement of ill-gotten gains pursuant to Cal. Bus. & Prof. Code § 17200 et seq.;

6.    For attorney's fees pursuant to statute as well as contract; and

7.    For other just and equitable relief as deemed appropriate by the Court.

Respectfully Submitted,

Dated: NOVEMBER 1, 2013          */s/ Carlton J. Willey*

Carlton J. Willey (CA Bar No. 269120)
WILLEY & BENTALEB LLP
One Market Street, Steuart Tower Suite 500
San Francisco, CA 94105
Phone: (415) 426-7111
Fax: (415) 276-1737
Carlton@WBLawPartners.com

*Attorney for Plaintiff*

# EXHIBIT A



# Purchase Order

Date: 4/12/2012
PO # DSC-SM-001

| | | | |
|---|---|---|---|
| BILL TO | Data Sales Corp 28725 Robinson Rd Conroe, TX 77385 281-367-9755 [ABC12345] | SHIP TO | Razor, Inc. 1309 Noble St Phila, PA 19123 484-245-5600 [ABC12345] |

| Shipping Method | Shipping Terms | Delivery Date |
|---|---|---|
| | | |

| Qty | Item # | Description | Job | Unit Price | Line Total |
|---|---|---|---|---|---|
| 1 | | Quote # 21214-2 attached | | | $29,867.00 |
| | | | | | |

| | |
|---|---|
| Subtotal | $29,867.00 |
| Sales Tax | |
| Total | $29,867.00 |

1. Please send two copies of your invoice.
2. Enter this order in accordance with the prices, terms, delivery method, and specifications listed above.
3. Please notify us immediately if you are unable to ship as specified.
4. Send all correspondence to:
   Razor, Inc.
   1309 Noble St.
   Phila, PA 19123
   Phone 484-245-5600

_____     **4/12/2012**
_Authorized by_                              Date

# EXHIBIT B

**RAZOR, INC**

PURCHASE ORDER

1309 Noble St.
Philadelphia, PA 19123
1.484.245.5600
[Fax Number]

| TO: | SHIP TO: | P.O. NUMBER: |
|---|---|---|
| **Torrey Point** | Razor, Inc | **RS-TP-00010** |
| 1390 Borregas Ave | 1309 Noble St | *[The P.O. number must appear* |
| Sunnyvale, CA 94089 | Philadelphia, PA 19123 | *on all related correspondence,* |
| 888.700.5747 | 1.484.245.5600 | *shipping papers, and invoices]* |

| P.O DATE | REQUISITIONER | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|
| 12/10/2012 | Matthew Kelly | | | |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 1 | 21172-24 | Attached quotes | $108,491.00 | $108,491.00 |
| 1 | 21172-25 | Attached quotes | $108,491.00 | $108,491.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | |
|---|---|
| SUBTOTAL | $216,982.00 |
| SALES TAX | |
| SHIPPING AND HANDLING | |
| OTHER | |
| **TOTAL** | **$216,982.00** |

1. Please send two copies of your invoice.
2. Enter this order in accordance with the prices, terms, delivery method, and specifications listed above.
3. Please notify us immediately if you are unable to ship as specified.
4. Send all correspondence to:
   Matthew Kelly
   1309 Noble St.
   Philadelphia, PA 19123
   1.484.245.5600
   [Fax Number]

*Authorized by Matthew Kelly / President*     12/10/12

Pick the Date

# EXHIBIT C

## Master Agreement

This Master Agreement ("Agreement") is made and entered into between Torrey Point Group LLC, a Delaware company, with offices at 1390 Borregas Ave, Sunnyvale, CA 94089 ("Torrey Point") and __Razor, Inc_____, a __PA_____ corporation, with offices at ____1309 Noble St, Philadelphia, PA 19123_____ ("Customer").

This agreement consists of this Master Agreement and the following designated attachments all of which form one agreement and collectively is referred to as the "Agreement".

| | | |
|---|---|---|
| 1. | Master Agreement Terms and Conditions | |
| 2. | Exhibit A: | Hardware/Software Purchase Agreement |
| 3. | Exhibit B: | Professional Services Agreement |
| 4. | Exhibit C: | Time and Material Services Agreement |
| 5. | Exhibit D | Managed Services and Support Agreement |

The Agreement is effective as of _____ (the "Effective Date").

The Agreement is the complete agreement between the parties concerning the relationship between Torrey Point and the Customer. The Agreement supersedes all prior or contemporaneous oral or written understandings and communications. There are no intended third party beneficiaries. Oral changes, modifications or waivers are not permitted.

ALL IMPLIED WARRANTIES (INCLUDING BUT NOT LIMITED TO MERCHANTABILITY OR FITNESS FOR A SPECIFIC PURPOSE) ARE EXPRESSLY DISCLAIMED. THE ONLY WARRANTIES ARE SET FORTH IN THE ATTACHMENTS. CUSTOMER AGREES TO LOOK TO THE MANUFACTURER OR SOFTWARE DEVELOPER/VENDOR FOR ITS EXCLUSIVE REMEDIES WITH RESPECT TO THE HARDWARE OR SOFTWARE COVERED BY THIS AGREEMENT.

The Master Agreement Terms and Conditions shall apply to all other attachments. In all other cases, if there is a conflict or inconsistency between the terms of this Agreement and the terms of an attachment, or between attachments, the terms of the applicable attachment, in the order set forth above shall apply.

EXCEPT AS EXPRESSLY AUTHORIZED UNDER A SPECIFIC STATEMENT OF WORK ("SOW"), CUSTOMER SHALL NOT (AND SHALL NOT PERMIT A THIRD PARTY TO): COPY IN WHOLE OR IN PART ANY DELIVERABLE; REVERSE ENGINEER, OR CREATE DERIVATIVE WORKS OF ANY DELIVERABLES other than for archival purposes to the extent permitted by the United States Copyright laws.

This Agreement may only be modified and provision may only be waived by a writing executed by both parties hereto. No additional terms may be added by a party through a purchase order, confirmation or other communication unless it is countersigned by the other party.

The parties' consent to the exclusive jurisdiction of the courts of the State of New York or of the United States located in New York County, New York and expressly waives trial by jury.

Notices and process may be given by hand delivery, express, priority, certified or registered mail, in each case with a return receipt requested from the recipient.

**Payment terms for this transaction shall be Net 90 paid in full, based on a completed credit application signed by an owner, and a personal guarantee signed by an owner. The extended terms are due to the Customer's desire to move purchase to a lease in 90 days. Customer will issue a complete Purchase Order for product, PAR, and NOC. Towards the end of the 90 days there will be a new PO issued by the leasing company. Torrey Point will invoice the leasing company and accept payment from leasing company. Customer agrees to pay a late payment fee equal to 2.0% per month on payments in arrears for more than 10 days. If payment is note received within 120 days, Torrey Point may choose to 1) collect from funds directly from owner based on its rights in the personal guarantee, 2) collect all equipment returned in original packaging, less a 20% restocking fee, or 3) take a preferred stock interest in the company as a percentage based on the following calculation, Price of Order divided by Book Value, not to be less than 20% or to exceed 75%.**

IN WITNESS WHEREOF, the duly authorized representatives of the parties hereto have caused this Agreement to be duly executed.

Torrey Point Group LLC

By: _____

Name: __Steve Fazio_____

Title: __CEO_____

Date: __12/13/2012_____

Razor, Inc

By: _____

Name: __Matt Kelly_____

Title: __President_____

Date: __12/13/12_____

Initials _____ _____    REV. 1.8 Revision Date 04.01.2012

## Master Agreement

1. **Definitions.**
   1.1. "Customer" means the entity specified above who is the final end user of the products or services described on a schedule or exhibit hereto.
   1.2. "Product" means the services identified on a schedule or exhibit hereto, and the hardware, software, and/or documentation installed or delivered to the Customer by Torrey Point.
   1.3. "Schedule A" means the list of services and products, quantities, and prices provided to a Customer by Torrey Point, sometimes referred to as "Torrey Point Quote" which is identified by reference to the Master Service Agreement Number which corresponds to this Agreement and which is incorporated herein by reference.
   1.4. "Statement of Work", sometimes referred to as the "SOW", means the services and deliverables that Torrey Point shall provide to Customer as set forth on a signed SOW which references the above Customer Identifier.
   1.5. "Deliverables" means all works of authorship provided by Torrey Point to the Customer pursuant to the terms of this Agreement.
   1.6. "Normal Business Hours" means 8:00 AM to 5:00 PM Monday through Friday local time, excluding Torrey Point and subcontractor observed holidays or other days when the New York Stock Exchange or banks are permitted to close in the City of New York.
   1.7. "Network Services Plan" or "NSP"" means the complete set of documentation relating to a SOW. The NSP may include: final design approval certificate; implementation parameters; documentation of required Customer technical actions which may be requested during the lifespan of a SOW; service guidelines, Customer acceptance criteria; final acceptance certificate; and technical drawings associated with the SOW.

2. **Scope.** These Terms are incorporated into the Master Agreement and all SOWs, schedules and exhibits bearing the above Customer Identifier.

3. **Orders and Security Interest.**
   Concurrently with the execution of this Agreement, Customer has placed orders for Product or a SOW or by issuing a written Purchase Order. The order is subject to acceptance by Torrey Point. Only the quantity, description of the product/service/equipment, price and payment schedule from the purchase order is incorporated herein. No additional terms are accepted. Customer also hereby grants to Torrey Point a purchase money security interest in each Product purchased by Customer hereunder, all replacements thereof, proceeds there from, and additions and accessions hereto, including authorizing Torrey Point to file UCC-1's and any other documents required to perfect such. Client will assist, support and cooperate wherever Torrey Point requires for the securing of such security interest. This security interest will remain in full force and effect until all amounts due Torrey Point under this Agreement are paid in full.

   If the Customer claims an exemption from sales, use or other taxes, either a capital improvement certificate or other tax exemption certificate must be delivered to Torrey Point prior to the finalization of the pricing and the execution of this Agreement. Customer shall be responsible for the payment of all taxes and shall hold Torrey Point harmless from and against any claims for taxes, interest and penalties levied by any governmental authority.
   3.1. Payments shall be made as provided on the applicable SOW or exhibit or schedule to this Agreement.
   3.2. Pricing shall be as specified in an accepted SOW or Schedule A.
   3.3. Price quotations remain valid for 30 days after issuance, but are subject to change if the hardware or software vendor modifies prices during such period. Prices may be increased if Torrey Point finds unanticipated field conditions or equipment or licensed software at Customer's facility that requires additional work. Installation services identified in Schedule A require an accepted SOW. Torrey Point Quotes or quotations are exclusive of any taxes, fees and duties or other amounts, however designated, and including without limitation excise or value added and withholding taxes which are levied or based upon such charges, or upon this Agreement. Any such taxes or levies shall be paid by Customer. Applicable taxes shall be billed as a separate item on the invoice, to the extent commercially possible.
   3.4. Payment terms are contingent upon receipt by Torrey Point of a credit report satisfactory to Torrey Point. Customer consents to Torrey Point obtaining a credit report from such reporting agencies as Torrey Point may choose. Torrey Point may cancel this agreement without liability if it is not satisfied with the credit report, or may change the credit terms if Customer's creditworthiness should change after the date hereof.
   3.5. Customer agrees to pay a late payment fee equal to 2.0% per month on payments in arrears for more than 10 days. The fee shall be retroactive to the due date of the payment. If this amount exceeds the amount that may be charged under applicable law, then the late payment fee shall be reduced to the maximum amount permitted by law to be charged for like obligations.

4. **Term.** The term of this Agreement shall continue until the engagement is completed or the termination of this Agreement as provided below.
   4.1. Each SOW shall be a discrete engagement and shall begin and end in accordance with its terms. Torrey Point may suspend performance and may terminate all such agreements and engagements if Customer is in default hereunder or under any SOW.
   4.2. This Agreement, any Torrey Point Quotes, Schedule A's, or SOWs hereunder may be terminated immediately upon written notice by either party to the other during the continuance of any of the following conditions:

   4.2.1. If the other party has failed to cure a breach of any material term or condition under this Agreement, Torrey Point Quote, Schedule A, and/or SOW within thirty (30) days after receipt of notice to cure from the other party including a detailed description of such breach.

Initials _____ _II/K_

## Master Agreement

**4.2.2.** Either party ceases to carry on business generally, as a going concern, or announces its intention to suspend business or cease business generally, or either party is the subject of an order for relief under the United States Bankruptcy Code or announces or commences liquidation, or a receiver is appointed with respect to a substantial part of its assets.

**4.2.3.** Customer assigns this Agreement or any rights hereunder or under a Torrey Point Quote, Schedule A, and/or SOW, without the prior written consent of Torrey Point, sells or agrees to sell or transfer, in one or more transactions, all or a substantial portion of its assets, or there is a "change in control" or of "beneficial ownership" of more than 20% of the "equity securities" of Customer as such terms are given meaning under the Securities Laws of the United States.

**4.3.** Notwithstanding anything else to the contrary, Torrey Point may terminate this Agreement immediately, upon written notice to Customer for the breach of Section 5 (Confidentiality). Additionally, Torrey Point may terminate this Agreement immediately upon written notice to Customer for the breach of Section 6 (Export, Re-Export, and Transfer Controls).

**4.4.** Upon termination of this Agreement, any Torrey Point Quotes, Schedule A, and/or SOW, Customer shall expire and Customer shall pay Torrey Point for all work performed under the effected Torrey Point Quote, Schedule A, and/or SOW(s) up to the effective date of termination at the agreed upon prices, fees and expense reimbursement rates set forth in the relevant document plus an amount equal to 20% of the balance of the price remaining to be paid as liquidated damages. In addition, if Torrey Point is required to pay any hardware, software or subcontractor order cancellation fees or has other costs resulting from termination, then Customer shall also pay cancellation fees as specified in Exhibit A.

**4.5.** Should this Agreement be terminated by either party, neither shall have any further obligations under this Agreement except as specified herein. Customer shall cease using any services, equipment, software or documentation supplied by Torrey Point and all licenses granted to the Customer by Torrey Point or its vendors shall terminate. Termination of this Agreement shall not constitute a waiver for any amounts due.

**4.6.** Either party may terminate this Agreement by providing 30 days written notice.

## 5.  Confidential Information

Customer acknowledges that in connection with this Agreement and its relationship with Torrey Point, it shall have possession of hardware, software and documentation belonging to Torrey Point that, if transferred or disclosed, could cause irreparable injury to Torrey Point. Further, Customer may obtain information relating to Products that is of a confidential and proprietary nature. Customer agrees that all of the foregoing is proprietary and "Confidential Information". Confidential Information may also include but is not limited to: computer programs and code, deliverables, inventions, products, future plans, trade secrets, error corrections, product design, know-how, techniques, financial information, copyrights, and other vital information which are valuable, special and unique assets of Torrey Point or its vendors which Customer knows or has reason to know is confidential or proprietary in nature. Customer agrees that they will not at any time or in any manner, either directly or indirectly, use for itself or for others (except as specifically permitted hereunder or under an applicable software license from a manufacturer or vendor of hardware or software supplied by Torrey Point), or divulge, disclose, or communicate in any manner any Confidential Information to any third party without the prior written consent of Torrey Point. Customer will protect the Confidential Information and treat it as strictly confidential. This section does not apply to information that is or becomes in the public domain through no fault of Customer or its agents or through a breach of any obligation of loyalty or trust. This provision shall survive the expiration or termination of this Agreement.

## 6.  Export, Re-Export, and Transfer Controls.

Customer hereby acknowledges that the Products supplied by Torrey Point may be subject to export controls under the laws, rules and regulations of the United States. Customer shall comply with such laws and regulations and agrees not to export, re-export, or transfer any software, products or technology without first obtaining all required United States Government exemptions, authorizations and licenses. Customer's obligation under this clause shall survive the expiration or termination of this Agreement.

## 7.  LIMITATIONS

NEITHER TORREY POINT NOR ITS SUPPLIERS EXTENDS ANY WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, EITHER TO END-USERS OR TO THIRD PARTIES FOR THE HARDWARE PURCHASED, SOFTWARE LICENSED, CODE OR SERVICES TO BE PROVIDED BY TORREY POINT OR ITS SUPPLIERS UNDER THIS AGREEMENT.

NEITHER TORREY POINT NOR ITS SUPPLIERS SHALL BE LIABLE TO CUSTOMER OR TO ANY THIRD PARTY FOR ANY INTERRUPTION IN SERVICE OF ANY HARDWARE OR SYSTEM, OR FOR ANY SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, OR FOR LOSS, DAMAGE, OR EXPENSE DIRECTLY OR INDIRECTLY ARISING FROM CUSTOMER'S USE OF (OR INABILITY TO USE) OR A THIRD PARTY'S UNAUTHORIZED USE OF THE CUSTOMER SUPPLIED EQUIPMENT, CODE OR SYSTEM TO WHICH IT IS ATTACHED OR ITS COMPONENTS, EITHER SEPARATELY OR IN COMBINATION WITH OTHER EQUIPMENT, OR FOR COMMERCIAL LOSS OF ANY KIND, REGARDLESS OF WHETHER TORREY POINT OR ITS SUBCONTRACTORS HAVE BEEN ADVISED OF SUCH POSSIBILITY.

IN ALL SITUATIONS INVOLVING PERFORMANCE OR NONPERFORMANCE BY TORREY POINT UNDER THIS AGREEMENT, CUSTOMER'S SOLE AND EXCLUSIVE REMEDY IS TO (1) TERMINATE THE SERVICES UNDER THE SCHEDULE OR SOW CLAIMED TO HAVE BEEN BREACHED BY THE GIVING OF WRITTEN NOTICE TO TORREY POINT, AND (2) RECEIVE A PRO RATA REFUND OF ANY PRE-PAID SERVICE FEES, LESS ANY SUMS DUE AND OWING TO TORREY POINT.

## 8.  Physical Conditions.

Initials _____ *illK*

## Master Agreement

**8.1.** Customer shall notify Torrey Point at least one (1) week prior to commencement of work, installation or cabling as to the existence of any unusual or unsafe conditions on or around the premises including but not limited to structural peculiarities of the premises or the presence of asbestos or other hazardous materials. Customer shall be responsible for all removal of asbestos and other hazardous substances, at its own expense. Existence of any such unusual conditions shall be grounds for Torrey Point to increase the price, or in the alternative, to terminate this Agreement. If Torrey Point discovers any unusual or unanticipated conditions after commencement of work without having received prior notification from Customer, Torrey Point may suspend performance until such date as Customer has remediated the premises. Customer shall indemnify and hold harmless Torrey Point, its employees, its agents, and subcontractors against any costs necessitated by or damages directly or indirectly attributable to such unusual conditions and shall reimburse Torrey Point for any additional costs or expenses that it may have as a result thereof or the delay caused by such conditions.

**8.2.** Customer agrees to provide safe conditions for Torrey Point technicians to work. Customer shall provide all power, light and environmental conditions necessary for the installation of the equipment and the use of the equipment and for service or maintenance. Customer shall supply all passwords, encryption keys, security codes and other information necessary for Customer to perform the services hereunder.

**8.3.** Customer agrees to permit and arrange full accessibility of the premises and of Customer owned equipment for Torrey Point's employees, agents, and Subcontractors to perform services and will make available a reasonable amount of secure space for storage by Torrey Point of such items as Torrey Point deems necessary. Customer shall obtain consents and waivers that may be required, prior to installation of the Product, to permit the above. Customer's failure to obtain such consents or waivers shall not relieve Customer from its obligations under this Agreement.

**9. General.**

**9.1.** FORCE MAJEURE. If Torrey Point's performance is prevented, delayed, or otherwise made impractical by reason of any act of God or nature, flood, riot, fire, strike, explosion, war (declared or undeclared), act of terrorism, governmental action, order or regulation, failure of electrical service or other utilities, shortage of supply, failure of communication facilities or common carriers, or any other cause beyond the reasonable control of Torrey Point, Torrey Point shall be excused from such performance until the abatement of such causes(s).

**9.2.** COVENANT NOT-TO-HIRE. Each party agrees not to hire or attempt to hire employees of the other party during the term and for a period of one (1) year after the term (including any renewal term) of this Agreement, without the express written consent of the other party. This obligation is intended to cover the parties to this Agreement and any subsidiary or affiliate of such party. In the event of a breach of this covenant, the aggrieved party shall be entitled to recover as liquidated damages and not as a penalty an amount equal to the employee's last full year's salary or the annualized equivalent of one full year's salary.

**9.3.** Choice of Law. This Agreement shall be interpreted and construed in accordance with the laws of the State of New York, without regard to any conflict of law principles that might cause the application of any other law.

**9.4.** Customer will pay all of Torrey Point's costs or expenses, including reasonable attorney's fees, incurred in enforcing this Agreement.

**9.5.** Amendments and Waivers. To be effective, changes, amendments or waivers must be in a writing signed by the party to be bound.

Initials _____ _IIK_

## Exhibit A:  Hardware/Software Agreement

This Agreement Exhibit A of the Exhibits referred to in the Master Service Agreement identified by the above Customer Identifier that is incorporated herein by reference. In the event of a conflict between the terms of this Exhibit and the Master Agreement, the terms of this Exhibit shall govern.

1.  **Definitions.**

    **1.1.**  "Hardware" means the tangible product made available to the Customer.

    **1.2.**  "Software" means the machine readable (object code) version of the computer programs made available by Torrey Point for license by Customer.

2.  **Scope**.  This Exhibit sets forth the terms and conditions for Customer's use or license of Hardware and license of Software.

3.  **Payment Terms.**  Payment terms are as specified in Schedule A. Payments for services not covered in Schedule A are due 30 days from date of invoice. Absent specific provision in the Schedule A to the contrary, the following terms shall apply:  40% upon signing of the Schedule A or acceptance by Torrey Point of the Customer's Purchase Order. Balance is due upon Customer receipt of Hardware or Software. All invoices after the signing payment are due and payable 30 days from date of invoice.

4.  **Cancellation and Deferment Policy**.  Orders placed in accordance with Agreement ordering processes, Section 3 of the Master Agreement, may be deferred or cancelled subject to the following:

    **4.1.**  Customer has the right to defer product shipment once for up to 30 days from the original scheduled shipping date if written notice is received by Torrey Point at least ten (10) business days before the originally scheduled shipping date. Rescheduled deliveries or changes to product requirements or configurations made by the Customer will result in additional charges. If made less than ten (10) business days of the original shipping date rescheduled deliveries or changes in product requirements or configuration will be subject to (a) acceptance by Torrey Point, its subcontractors, or manufacturer, and (b) a minimum service charge of 10% above the manufacturers' charges. For cancellations or reductions in equipment, Torrey Point will endeavor to obtain cancellation from applicable hardware or software vendors. However, Customer shall be responsible for all cancellation charges, reconfiguration charges and rescheduling charges assessed by the vendor or the delivery company, all demurrage and handling charges plus an amount equal to 20% of the purchase price or license fee attributable to such cancellation, reconfiguration or change.

5.  **Shipping, Delivery, Risk of Loss and Title.**  Shipping terms are FOB the Manufacturer's delivery point. Risk of loss shall pass from Torrey Point to the Customer upon delivery to the carrier. The Customer shall be responsible for all freight, handling and insurance charges. If Torrey Point arranges for transportation, it shall be as an accommodation to the Customer. Torrey Point shall not be liable for loss or damage or penalty for delay in delivery or for failure to give notice of delay. Customer will maintain adequate insurance against fire, theft or other casualty or loss.

    **5.1.**  Staging.  When specified in a Torrey Point SOW, Torrey Point will stage Customer equipment at a Torrey Point staging facility.  When staging is provided by Torrey Point, Torrey Point shall, on the Customer's behalf, accept delivery of equipment from the manufacturer at the staging facility. Upon acceptance by Torrey Point, the Product shall be considered Customer equipment temporarily located at a Torrey Point facility. For invoicing purposes, such equipment is considered accepted and received by Customer. Torrey Point shall use reasonable care to secure the equipment at the staging facility. Customer shall insure the same and name Torrey Point as an additional insured.

6.  **Software Licensing**.  Torrey Point shall provide a copy of the manufacturer's software license agreement with products purchased through Torrey Point that ordinarily are delivered with such licenses. Torrey Point provides no independent software license with respect to such software. Customer agrees to look exclusively to the manufacturer or vendor thereof for any warranty or claims relating thereto.

7.  **Limited Warranty.  Torrey Point makes no warranty, express or implied, either written or oral. Customer shall look exclusively to the manufacturer's or third party vendor's limited warranty delivered in connection with the Product, if any.**

Initials _____ *MK*

## Exhibit B: Professional Services Agreement

This Agreement Exhibit B of the Exhibits referred to in the Master Service Agreement identified by the above Customer Identifier that is incorporated herein by reference. In the event of a conflict between the terms of this Exhibit and the Master Agreement, the terms of this Exhibit shall govern.

1. **Services and Statement of Work.**
   **1.1.** Torrey Point shall perform, make available, and/or manage the services as described in the SOW attached to this Agreement.
   **1.2.** A separate SOW will be required for each project, assignment or task requested by Customer. Each SOW shall specifically reference the Customer Identifier. Torrey Point may provide such specification as required. The SOW will become a part of this Exhibit by reference when signed by Torrey Point and Customer and shall include: a description of services to be provided; a description of Deliverables to be delivered by Torrey Point to the Customer; a projected delivery and performance schedule; specific acceptance criteria that Torrey Point is required to meet to fulfill it obligations under the SOW; and identification of Torrey Point and Customer contacts and responsibilities.
   **1.3.** An associated Schedule A will be required for each project, assignment or task requested by the Customer. The Schedule A will summarize all services and associated prices.

If any of the foregoing terms are not completed, then the SOW shall nevertheless be a binding agreement and the missing terms shall be incorporated from the written proposal made by Torrey Point. A SOW may only be amended or modified by a written document signed by authorized representatives of Torrey Point and Customer, in accordance with the change control procedures set forth therein.

2. **Time & Material Services.** Services outside the scope of a SOW and services directly contracted for on a Time and Material basis are provided as per Exhibit C Time and Material Services Agreement.

3. **Payment Terms.** Payment terms are as specified in Schedule A. Payments for services not covered in Schedule A are due 30 days from date of invoice. Absent specific provision in the Schedule A to the contrary, the following terms shall apply: 40% upon signing of the Schedule A or acceptance by Torrey Point of the Customer's Purchase Order. Balance is due upon acceptance as outlined in the SOW or 30 days following Torrey Point advising Customer that the SOW is substantially complete and ready for acceptance testing. If Customer fails to advise Torrey Point that there is a material deficiency with the service provided within ten (10) days of acceptance testing, or if the Customer fails to participate in acceptance testing, then the Balance is considered due and shall be invoiced in full. All invoices are due and payable 30 days from date of invoice.

4. **Customer Work Policy.** Unless otherwise agreed to by both parties, Torrey Point personnel (including its subcontractors) will observe the working hours, working rules, and holiday schedules of Customer while working on Customer's premises.

5. **General Responsibilities of the Customer.**
   **5.1.** Customer shall designate a person to whom all communications may be addressed and who has the authority to act on all aspects of the services. This individual shall be responsible for ensuring site preparation according to the NSP and any adds, changes or deletions on each site are completed prior to installation. Customer shall identify primary and backup Customer Site Contacts for all targeted sites, who shall be accountable to act as the lead escort, and shall also be accountable for providing necessary information, obtaining access clearances, and shall interface as required with other organizations.
   **5.2.** Unless otherwise agreed to by the parties, Customer shall ensure that Torrey Point's request for information or documentation needed for the project is met within two (2) business days of Torrey Point's request.
   **5.3.** Customer shall define detailed Customer requirements and ensure that these requirements are met as defined in the SOW.
   **5.4.** Customer shall supply, at its sole cost and expense, appropriate power, communications facilities and services, direct modem or internet access, passwords and appropriate environmental conditions for the Product and the installers, meeting installation and operating specifications set forth in the manufacturer's specifications for the equipment, together with all supplemental equipment, cable access and concealment, and electrical and telecommunications and other connections and conditions necessary for installation and operation of the Product. Torrey Point will not be required to install the Product until Customer's preparations are complete. Customer agrees to notify Torrey Point at least ten (10) business days prior to the scheduled work commencement date if the premises will not be ready for Torrey Point or if the Customer is unable to prepare the premises by the scheduled date of delivery. Customer shall be responsible for any costs associated with such delay. Customer understands that such delay will cause Torrey Point to reschedule installation at a later date.
   **5.5.** Insure Customer's own products covered under this Agreement against loss or damage during the staging process.
   **5.6.** Perform all upgrades and changes identified and required by Torrey Point for the successful implementation of the products.

# Exhibit C: Time and Material Services
# Agreement

This Agreement Exhibit C of the Exhibits referred to in the Master Service Agreement identified by the above Customer Identifier that is incorporated herein by reference. In the event of a conflict between the terms of this Exhibit and the Master Agreement, the terms of this Exhibit shall govern.

1. **Services**
   1.1. Torrey Point agrees to provide Time and Material services ("T&M Services") to the Customer.  A signed Schedule A indicating acceptance of the Rate Table and terms is required for Torrey Point to deliver T&M Services to the Customer.
   1.2. Torrey Point onsite T&M support services are limited to a 50-mile radius of a Torrey Point service center. Torrey Point, at Torrey Point's sole discretion, may elect to dispatch beyond the 50-mile radius. Dispatches beyond the 50-mile radius will incur additional time and travel expenses as specified in the then current T&M Rate Schedule.
   1.3. T&M Service requests from T&M Customers are generally queued on a first come first served basis. The TAC service representative will provide Customer with a good faith estimated response time based upon the requested service identified by the Customer and the projected availability of support personnel. No guarantee of response time or the period necessary to complete service can be provided nor is any employee of Torrey Point authorized to issue such guaranties, either orally or by any other means. The TAC is generally available between the hours of 8 AM to 5 PM local time on normal business days ("Business Hours") excluding Weekend days and Torrey Point observed holidays.
   1.4. The rates for T&M Services ("T&M Rate Table") are specified below. Rates will remain in effect for six (6) months beginning with the date of this contract. After this initial period, the T&M Rate Table may be revised from time to time by Torrey Point to Torrey Point's then generally available T&M Rates to its Customers that are not on another rate plan. T&M Customers purchasing an advanced payment Block of Hours ("BoH") shall maintain a minimum balance of ten (10) hours on account at all times; T&M Customers with less than ten (10) hours on account will revert to the latest generally available Torrey Point T&M Rates after the BoH's is consumed.
   1.5. Remote support shall be provided during normal Business Hours at the applicable T&M Rate with a ½-hour minimum for each Remote Support Request. Remote Support provided outside Business Hours or on Weekends will be billed at a rate of 1.5 times the basic T&M Rates. Remote Support provided on Holidays will be billed at 2.0 times the basic T&M Rates (2.5 times for Holiday nights and evenings).
   1.6. Onsite Support shall be provided at the then applicable T&M Rates, with a four (4) hour minimum per call during Business Hours. The four (4) hour minimum is inclusive of travel time to/from the Customer's local location. After four hours, all time will be billed in ½-hour increments. Onsite Support provided outside Business Hours or on Weekends will be billed at a rate of 1.5 times the basic T&M Rates. Onsite Support provided on Holidays will be billed at 2.0 times the basic T&M Rates (2.5 times for Holiday nights and evenings).
   1.7. Support outside of the 50-mile radius will be billed at the Onsite Support terms plus reasonable time and travel expenses associated with travel. Engineering travel time beyond the 50-mile radius will be billed at a minimum rate of $250/hour not to exceed $2000 per day, plus any travel-related expenses.
   1.8. Customer shall be responsible for providing all hardware, parts and software at its own expense. Customer shall obtain, at its own expense, any permission or licenses necessary to permit Torrey Point to perform the T&M Services. Upon receipt of invoices from Torrey Point, Customer shall pay Torrey Point for any hardware, parts and software supplied by Torrey Point in connection with the T&M Services.

2. **Payment Terms.**
   2.1. All invoices are due and payable 30 days from date of invoice, less the 40% due on signing.
   2.2. During the Term, Customer may purchase an advanced payment T&M Block of Hours (BoH) that will remain available during the term of this Agreement and any renewal. To purchase a BoH, Customer shall provide a pre-paid advance purchase order for the number of hours desired but not less than 10 hours. Payment shall be at the T&M BoH rates in effect on the date that payment is received, at the pricing tier that is applicable to the volume of hours being purchased. If a change in T&M BoH Rates is announced, the Customer may purchase up to 10 additional hours at the T&M BoH Rate in effect prior to the increase by making payment within 30 days from the date that the increase is first announced. Each BoH purchased at a then effective T&M Rate may be used for up to 6 months following a T&M BoH Rate increase. Thereafter, Customer shall be required to pay the difference between the T&M BoH Rate in effect on the date of Service and the T&M BoH Rate in effect when the BoH was purchased. Blocks and quantities of pre-paid BoH time purchased are provided with the Schedule A and are subject to change as provided above for T&M BoH Rates.  No refunds shall be made for unused BoH.  Unused BoH will expire twenty-four (24) months from date of purchase.
   2.3. Customer may elect an auto-renewal option.  If elected, customer will automatically be invoiced for forty (40) additional hours when their account balance reaches less than five (5) hours remaining.

Initials _____ *illegible*

## Exhibit D:  Managed Services and Support
## Agreement

This Agreement Exhibit E of the Exhibits referred to in the Master Service Agreement identified by the above Customer Identifier that is incorporated herein by reference. In the event of a conflict between the terms of this Exhibit and the Master Agreement, the terms of this Exhibit shall govern.

1.  **Services and Statement of Work.**

    1.1.  Support services shall include services necessary to maintain in "good working order" the System as specified in Schedule A, and provide such other Elective Operational Services ("Elective Services") as specified in that schedule. Torrey Point may conduct monitoring of the System and initiate remote diagnostic testing when necessary. Unless specifically stated to the contrary in Schedule A, Torrey Point shall commence required diagnostics and repair remotely. Should Customer select Onsite services as declared in Schedule A, Torrey Point shall dispatch service personnel to the Premises to perform necessary onsite repairs if Torrey Point cannot facilitate such repairs from a remote location.

    1.2.  Hardware replacement and software updates that may be needed to facilitate repairs are provided through manufacturer hardware maintenance programs (e.g., Cisco SMARTnet™, Juniper J-Care™) and software maintenance that are either currently in place, or initiated and/or renewed by Torrey Point on behalf of Customer. Customer is required to maintain hardware maintenance and/or software maintenance as may be applicable on all System components identified in Schedule A for the duration of the support service unless otherwise self-insuring these components or procuring special support services providing support and equipment replacement equivalent to manufacturer programs.

    1.2.1.  Torrey Point Support Service shall reference the respective manufacturer hardware and software contracts for the covered System components as supplied by Customer. Hardware replacements and software updates are made available per the stipulations of the respective manufacturer's program. If the Customer elects or has previously elected to purchase manufacturer's maintenance contracts directly from the manufacturer, then the Customer must provide Torrey Point with the required maintenance contract numbers, expiration dates, and identify the Torrey Point TAC as a maintainer of the covered devices to the manufacturer.

    1.2.2.  Customer may alternatively elect to "self-insure" some or all System components. For Equipment identified in Schedule A as Customer "self-insured", Customer will assume the role of manufacturer and be solely responsible for providing, to Torrey Point, replacement hardware and software updates required to maintain the System in "good working order". If the Customer elects to "self-insure" their hardware through internal bench stock, Customer must identify the equipment stock available for System repair, the location of such equipment, and the conditions by which Torrey Point may access such equipment. The conditions by which Torrey Point may access equipment may significantly affect Torrey Point response time and system mean time to repair.

    1.3.  Customer may request support services from the Torrey Point Technical Assistance Center (TAC) via email or telephone. Requests for service involving a Major System Failure must be confirmed by telephonic contact to the Torrey Point TAC whereby Customer must clearly define the outage as one meeting the "Major System Failure" or "network outage" criteria as set forth in this Agreement.

    1.4.  The dispatch of manufacturer's technicians for hardware replacement is defined per the availability and response terms of the manufacturer's hardware maintenance program.  Should Customer select onsite services as declared in Schedule A, Torrey Point shall dispatch a support services technician within a radius not to exceed 50 miles of a Torrey Point service center.

    1.4.1.  If a dispatch beyond a 50-mile radius is requested by Customer and accepted by Torrey Point, at Torrey Point's sole discretion, then a travel fee of $250/hour, not to exceed $2000/day, will be assessed. The travel fee is a "portal-to-portal" fee calculated from the nearest Torrey Point service center to the Customer premise. This fee does not include airfare or overnight accommodations should they be required to support the dispatch. Such items will be itemized and invoiced in addition to the travel fee. At Customer's discretion, an equivalent dollar value of Elective Service hours may be used to offset travel fees.

    1.5.  When routine support services are requested, Torrey Point shall respond during standard Torrey Point service hours within twenty-four (24) hours (excluding weekends and Torrey Point holidays) of receipt of Customer's service request. The service hours for Torrey Point to provide routine maintenance and/or repair service for the System will be between the hours of 8 AM and 5 PM prevailing local time, Monday through Friday, excluding Torrey Point observed holidays.

    1.6.  In response to a Major System Failure, a qualified Torrey Point TAC engineer shall respond within one (1) hour of Torrey Point's receipt of Customer's service request. Torrey Point service hours for Major System Failure events shall be twenty-four (24) hours a day, seven (7) days a week. The response time for maintenance shall be the elapsed time between Torrey Point's receipt of Customer's service request and the start of remote support. Should Customer select Onsite services as declared in Schedule A, service personnel shall arrive onsite within four (4) hours of dispatch by the Torrey Point TAC. In all cases, the availability of replacement hardware is based on the delivery of the manufacturer hardware program; or, if Customer is "self-insured", per the terms of the Customer's internal support process as defined in Schedule A. Should Customer select Onsite services as declared in Schedule A, Torrey Point will make best effort to coordinate the timely availability of onsite personnel upon availability of manufacturer-supplied parts.

    1.7.  Customer may elect Critical Device coverage for key systems and infrastructure in their network. The Critical Device elections are included in the Schedule A for support services programs where this option is applicable. This coverage provides a means for Customer to obtain priority service response upon the failure of devices designated as Critical Devices. In response to a Critical Device failure, a qualified Torrey Point TAC engineer shall respond within one (1) hour of Torrey Point's receipt of Customer's service request. Torrey Point service hours for Critical Device failures shall be twenty-four (24) hours a day, seven (7) days a week. The response time for maintenance shall be the elapsed time between Torrey Point's

## Exhibit D:  Managed Services and Support Agreement

receipt of Customer's service request and the start of remote support. Should Customer select Onsite services as declared in Schedule A, service personnel shall arrive onsite within four (4) hours of dispatch by the Torrey Point TAC. In all cases, the availability of replacement hardware is based on the delivery stipulations of the selected manufacturer hardware program; or, if Customer is "self-insured", per the terms of the Customer's internal support process as defined in Schedule A. Should Customer select Onsite services as declared in Schedule A, Torrey Point will make best effort to coordinate the timely availability of onsite personnel upon availability of manufacturer-supplied parts.

1.8.  Elective Services hours listed in Schedule A are delivered on a scheduled basis with response times to be coordinated between the Torrey Point TAC and Customer.

1.9.  All services included in the support services contract are exclusively identified in the Schedule A. The Schedule A shall specify the devices included in the support services subscription, designation of a device as Critical Device or Non-Critical Device, and whether Onsite dispatch coverage has been selected.

1.10.  Support services vary by the program selected, and may include a limit on the number of hours that Torrey Point shall expend supporting a Customer.  The Schedule A shall clearly identify and quantify any such restrictions.

1.11.  Customer may elect to purchase additional outsource services as specified in an Outsourced Services SOW. SOW-related outsourcing is not included in the scope of this Exhibit

2.  **Definitions.**

2.1.  **Good Working Order** means the proper functioning of the System as defined in the Schedule A at the time of contract award. "Good working order" shall not be construed to include system administration, configuration changes, scripting, or moves, adds and changes (MACs).

2.2.  **Self-Insure** means the Customer will provide replacement hardware through internal Customer bench stock.

2.3.  **System** means the totality of components delineated in Schedule A. Components not specified in Schedule A are not covered by support services.

2.4.  **Major System Failure** means there is a critical impact to Customer's business operation; or the majority of ingress/egress points to the System are inoperative; or more than 25% of users cannot access the System.

2.5.  **Critical Device** means a System component, device, or group of devices whose failure would cause a Major System Failure.

2.6.  **Non-Critical Device** means a System component or device whose individual failure would not cause a Major System Failure. A group of Non-Critical Devices whose combined failure results in a Major System Failure is responded to as a Major System Failure regardless of the individual System components designation as Non-Critical.

2.7.  **Elective Services** means those supplemental service hours purchased by the Customer and designated in the Schedule A that are not associated with the routine maintenance of the System. Customer uses these hours to acquire additional services that they define within areas of Torrey Point competency.

2.8.  **Effective Date** means the date the parties sign the Schedule A.

3.  **Deliverables.**

3.1.  **Service Delivery Plan (SDP).**  The SDP is the document used by Torrey Point to convey technical and support information concerning the support service.  The SDP shall specify:  Customer location of the CPE is to be installed to facilitate monitoring included in the support service; Customer accessibility and security issues; a support service summary and guidelines; and general manageability issues associated with Customer environment.

4.  **Time & Material Services.**  Services outside the scope of this exhibit and services directly contracted for on a Time and Material basis are provided as per Exhibit C Time and Material Services Agreement.

5.  **Exclusions.**  Torrey Point will attempt to respond to all requests for service. If service is required outside of Torrey Point's service hours, labor for such non-covered service calls will be chargeable to Customer in accordance with Torrey Point's then current Time and Material rate or if included as part of Schedule A, the Elective Service Rate. Services that are specifically excluded from standard Maintenance but available as Elective Services or on a Time and Material basis, are:

5.1.  PSTN troubleshooting

5.2.  Software upgrades

5.3.  Day-to-day management and administration of the System

5.4.  Remote and onsite MACs for the purpose of system administration including but not limited to: terminal relocation or replacement, dial plan management, QoS policy management and administration, scripting, and call vectoring

5.5.  Direct support to Customer end users

5.6.  Archival of configuration and system files

5.7.  System growth and capacity planning

5.8.  Ad hoc or scheduled audits and reports

5.9.  Training

5.10.  Emergency onsite support (unless specifically included in Schedule A)

5.11.  Troubleshooting of System components when the root cause is determined to be a non-covered component.

Initials _____ _llK_

## Exhibit D:  Managed Services and Support
## Agreement

**6.    Pre-Existing Conditions.**  Customer shall warrant that the System is in "good working order" as of the effective date of this agreement. Torrey Point services required to correct pre-existing conditions or modifications required to achieve the Customer's desired performance level will be provided at the then current T&M rate or Elective Services Rate, whichever is lower.

**7.    Term.**  This Exhibit shall be effective ("Effective Date") as of the date that the parties execute the Schedule A. Torrey Point services shall commence on the Service Start Date no later than thirty (30) days after the effective date. The support service shall remain in effect for one year beginning with the Effective Date.  At the conclusion of the initial Term, if Customer is then current in all payments due to Torrey Point, Customer may elect to renew the Service at the then generally available service renewal fee for one (1) additional twelve (12) month period by giving written notice to Torrey Point prior to the expiration of the initial term.

**8.    Payment Terms.**  Payment terms are as specified in Schedule A. Absent specific provision in the Schedule A to the contrary, the following terms shall apply:  100% upon signing of the Schedule A or acceptance by Torrey Point of the Customer's Purchase Order. All invoices are due and payable 30 days from date of invoice.

**9.    General Responsibilities of the Customer.**
   **9.1.**   Customer shall designate a person to whom all communications may be addressed and who has the authority to act on all aspects of the services.
   **9.2.**   If required, Customer shall be responsible for the configuration of SNMP on devices. Customer may elect to use Elective Service hours to facilitate the configuration of SNMP by Torrey Point if so desired.
   **9.3.**   Customer shall provide read/write access to devices as required.
   **9.4.**   Customer shall be responsible for providing all hardware, parts and software for the network at its own expense.  If Torrey Point is required to supply any hardware, parts or software, updates, new versions, patches or releases, not specifically included in this Exhibit and Schedule A, then Customer shall pay Torrey Point for any hardware, parts and software supplied by Torrey Point in connection with the T&M Services.

**10. License.**  Upon final payment of all amounts required pursuant to the Schedule A and subject to the terms of this Exhibit and the Master Agreement, Torrey Point grants to Customer a nonexclusive and nontransferable license to use the hardware and the software resident thereon solely on the hardware supplied by Torrey Point.  The license is limited solely for Customer's internal business use. This license is coterminous with the service agreement which the Customer executes with Torrey Point under the Schedule A, but shall terminate if Customer is in breach of its commitments to Torrey Point under this or any other Agreement beyond applicable grace or cure periods, if any.

Initials _____ *WK*

# EXHIBIT D

## <u>PERSONAL GUARANTY</u>

May ___, 2012

FOR VALUE RECEIVED, and in consideration of, and as a condition to, the sale of $_____ of IT Equipment and Services from Torrey Point Group LLC (the "<u>Vendor</u>") to or for the account of _____Razor, Inc_____, a _____PA_____ corporation (the "<u>Customer</u>"), the undersigned, jointly and severally, hereby absolutely and unconditionally guarantee to the Vendor the prompt and full performance and payment when due of all present or future obligations, covenants and liabilities of any and all kinds of the Customer to the Vendor arising under or relating to the sale of hardware from the Vendor to the Customer, in each case without requiring any notice of default of nonpayment, nonperformance or nonobservance, or any presentment or proof, notice, or demand in order to charge the undersigned therefor, all of which the undersigned hereby expressly waive.

The undersigned also hereby agree to be liable, jointly and severally, for all costs and expenses, including attorneys' fees, incurred by the Vendor in connection with the enforcement of this guaranty, the enforcement of the Customer's obligations arising under or relating to the sale of hardware from the Vendor to the Customer, and the collection of the amounts due under this guaranty or under the sale of hardware (including monetary obligations incurred during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding). The amounts due under this guaranty shall include interest accruing thereon before or after the commencement of any insolvency, bankruptcy or reorganization proceeding in respect of the Customer whether or not such interest is an allowable claim in any such proceeding and irrespective of the discharge or release of the Customer. The undersigned hereby expressly agree that the validity of this guaranty and the obligations of the undersigned hereunder shall not be terminated, affected or impaired by reason of the assertion, or by reason of the non-assertion, by the Vendor against Customer of any of the rights or remedies reserved to the Vendor under the sale of hardware to the Customer. The undersigned further covenant and agree that this guaranty shall remain and continue in full force and effect as to any renewal, modification or extension of the contracts relating to the sale of hardware from the Vendor to the Customer (and no such renewal, modification or extension will require the consent of or notice to the undersigned). The undersigned further agree that the Vendor may deal with Customer in whatever manner the Vendor may elect without diminishing or discharging the liabilities and responsibility of the undersigned under this guaranty.

The undersigned waives notice of the acceptance of this guaranty and of the making of any sale of hardware to the Customer or the incurrence of any obligation to the Vendor.

The undersigned acknowledge that they have derived or expects to derive a financial or other benefit from each and every obligation incurred by the Customer to the Vendor.

This guaranty shall remain in full force and effect and be binding upon the undersigned, and the undersigned's successors and assigns, until all obligations of the Customer to the Vendor have been performed and/or indefeasibly paid in full. This guaranty shall continue to be effective, or shall be reinstated, as the case may be, if at any time payment of all or any part of

any payment of any of the obligations of the Customer is rescinded or must be restored or returned by the Vendor whether under any insolvency, bankruptcy, receivership or reorganization proceeding or otherwise.

This guaranty may be assigned by the Vendor, and its benefits shall inure to the successors, indorsees and assigns of the Vendor.

This guaranty is a guarantee of payment and not of collection, and the Vendor shall be under no obligation to take any action against the Customer or any other person liable with respect to any of the obligations of the Customer or resort to any collateral security securing any of the obligations of the Customer or this guaranty as a condition precedent to the undersigned being obligated to make payment and to perform as agreed herein.  The undersigned hereby waive any right to claim or interpose any defense (other than payment of the applicable obligations of the Customer), counterclaim or offset of any nature and description which he may have or which may exist between and among the Vendor, the Customer and/or the undersigned or to seek injunctive relief.

Until such time as the Vendor shall have received payment in full in cash in satisfaction of all of the obligations of the Customer, the undersigned waive any right to be subrogated to the rights of the Vendor with respect to the obligations of the Customer, and the undersigned waive any right to and agree that they will not institute or take any action against the Customer seeking contribution, reimbursement or indemnification by the Customer with respect to any payments made by the undersigned to the Vendor hereunder until such time.

Every provision of this guaranty is intended to be severable; if any term or provision of this guaranty shall be invalid, illegal or unenforceable for any reason whatsoever, the validity, legality and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby.

Each and every right, remedy and power hereby granted to the Vendor or allowed it by law or other agreement shall be cumulative and not exclusive of any other right, remedy or power, and may be exercised by the Vendor at any time and from time to time.

This guaranty contains the entire agreement and understanding between the Vendor and the undersigned with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.  This guaranty may not be amended, and compliance with its terms may not be waived, orally or by course of dealing, but only by a writing signed by the undersigned and by an authorized officer of the Vendor.

THIS GUARANTY SHALL BE CONSTRUED AND INTERPRETED, AND ALL RIGHTS AND OBLIGATIONS HEREUNDER SHALL BE DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS.  THE UNDERSIGNED SUBMIT TO THE JURISDICTION OF STATE AND FEDERAL COURTS LOCATED IN THE COUNTY OF NEW YORK AND STATE OF NEW YORK IN PERSONAM AND AGREE THAT ALL ACTIONS AND PROCEEDINGS RELATING DIRECTLY OR INDIRECTLY TO THIS GUARANTY SHALL BE LITIGATED ONLY IN SAID COURTS AND THAT SUCH

COURTS ARE CONVENIENT FORUMS.  THE UNDERSIGNED WAIVE PERSONAL
SERVICE UPON HIM AND CONSENTS TO SERVICE OF PROCESS OUT OF SAID
COURTS BY MAILING A COPY THEREOF TO HIM BY REGISTERED OR CERTIFIED
MAIL TO THE ADDRESS SET FORTH BELOW ON THE SIGNATURE PAGE HERETO.

THE UNDERSIGNED AND THE VENDOR WAIVE THE RIGHT TO TRIAL BY
JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF OR IN ANY
WAY CONNECTED TO THIS GUARANTY OR ANY OF THE TRANSACTIONS
CONTEMPLATED HEREBY.

This guaranty shall become effective as to any of the undersigned when a counterpart
hereof executed on behalf of such person shall have been delivered to the Vendor and thereafter
shall be binding upon such person and the Vendor and his respective successors and assigns, and
shall inure to the benefit of such person and his Vendor, and their respective successors and
assigns, except that no guarantor shall have the right to assign his rights or obligations hereunder
or any interest herein (and any such attempted assignment shall be void).  This guaranty shall be
construed as a separate agreement with respect to each of the undersigned and may be amended,
modified, supplemented, waived or released with respect to any of the undersigned without the
approval of any of the other guarantors hereunder and without affecting the obligations of any of
the other guarantors hereunder.

[*Signature Page to Follow.*]

　　　　　　　　　　　　　　　　　　　　　　　　　　DOCSNY-278422

IN WITNESS WHEREOF, this personal guaranty has been executed by the undersigned on the date first written above.

Signature _____

Name Printed_____
Matt Kelly

On the____ day of May 2012,  before me, the undersigned, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(ies), and that by his signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

(signature of Notary Public)

# EXHIBIT E

**Torrey Point Group LLC**
1390 Borregas Ave
Sunnyvale, CA 94089

# Invoice

| Date | Invoice # |
|------|-----------|
| 8/3/2012 | 8632 |

888-700-5747        finance@torreypoint.com

| Bill To | Ship To |
|---------|---------|
| Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123 | Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123 |

| P.O. Number | Terms | Due Date | Ship | Via |
|-------------|-------|----------|------|-----|
| Q21172-17 | Net 30 | 9/2/2012 | 8/3/2012 | |

| Item Code | Description | Quantity | Price Each | Amount |
|-----------|-------------|----------|------------|--------|
| | Razorservers Statement of Work for Network Discovery<br>SoW / Quote 21172-17 | | | |
| Engineering | Network Engineering<br>Project Initiation | 1 | 2,500.00 | 2,500.00 |
| Engineering | Network Engineering<br>Discovery - T&M Engineering :: Up to 5 Man Days @ $2,000 / Day, Up To $10,000 | 0 | 7,500.00 | 0.00 |
| | Philadelphia County, PA Sales Tax | | 8.00% | 0.00 |

| **Subtotal** | **Total** | $2,500.00 | **Payments/Credits** | $0.00 |
|---|---|---|---|---|

**Remit To:**
**Torrey Point Group LLC**
**4811**
**PO BOX 894811**
**Los Angeles, CA 90189**

**Balance Due**     $2,500.00

**Torrey Point Group LLC**
1390 Borregas Ave
Sunnyvale, CA 94089

# Invoice

| Date | Invoice # |
|---|---|
| 10/11/2012 | 9015 |

888-700-5747        finance@torreypoint.com

| Bill To | Ship To |
|---|---|
| Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123 | Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123<br>John Zettlemoyer<br>484.245.5600 |

| P.O. Number | Terms | Due Date | Ship | Via |
|---|---|---|---|---|
| Q19169-2 | Net 30 | 11/10/2012 | 10/11/2012 | |

| Item Code | Description | Quantity | Price Each | Amount |
|---|---|---|---|---|
| Freight | Shipping & Insurance | | 270.00 | 270.00 |
| | Sales Tax | | 0.00% | 0.00 |

| | | | |
|---|---|---|---|
| **Subtotal** | | **Total** | $270.00 |
| | | **Payments/Credits** | $0.00 |

**Remit To:**
**Torrey Point Group LLC**
**4811**
**PO BOX 894811**
**Los Angeles, CA 90189**

**Balance Due** $270.00

**Torrey Point Group LLC**

1390 Borregas Ave
Sunnyvale, CA 94089

# Invoice

| Date | Invoice # |
|------|-----------|
| 10/31/2012 | 9177 |

888-700-5747        finance@torreypoint.com

| Bill To | Ship To |
|---------|---------|
| Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123 | Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123 |

| P.O. Number | Terms | Due Date | Ship | Via |
|-------------|-------|----------|------|-----|
| Q21172-17 | Net 30 | 11/30/2012 | 10/31/2012 | |

| Item Code | Description | Quantity | Price Each | Amount |
|-----------|-------------|----------|------------|--------|
| | Razorservers Statement of Work for Network Discovery<br>SoW / Quote 21172-17 | | | |
| Engineering | Network Engineering<br>Project Initiation {billed on invoice 8632} | 0 | 2,500.00 | 0.00 |
| Engineering | Network Engineering {billed on invoice 8976}<br>Discovery - T&M Engineering :: Up to 5 Man Days @ $2,000 / Day<br><br>Week-starting:<br>Aug 5 - 4 hours<br>Aug 12 - 7 hours<br>Sep 9 - 10 hours<br>Sep 23 - 4 hours<br>Total = 25 hours (3 days x $2000 = $6,000 - $2,500 project initiation = $3,500) | 0 | 3,500.00 | 0.00 |
| Engineering | Network Engineering<br>Discovery - T&M Engineering :: Up to 5 Man Days @ $2,000 / Day<br><br>Week-starting:<br>Oct 14 : 10 hours<br>Total = 10 hours (1 day x $2000 = $2,000) | 1 | 2,000.00 | 2,000.00 |
| | Philadelphia County, PA Sales Tax | | 8.00% | 0.00 |

| Subtotal | | Total | $2,000.00 | Payments/Credits | $0.00 |
|----------|--|-------|-----------|------------------|-------|

| | Balance Due | $2,000.00 |
|--|-------------|-----------|

**Remit To:**
**Torrey Point Group LLC**
**4811**
**PO BOX 894811**
**Los Angeles, CA 90189**

**Torrey Point Group LLC**
1390 Borregas Ave
Sunnyvale, CA 94089

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/30/2012 | 9333 |

888-700-5747       finance@torreypoint.com

| Bill To | Ship To |
|---------|---------|
| Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123 | Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123 |

| P.O. Number | Terms | Due Date | Ship | Via |
|-------------|-------|----------|------|-----|
| Q21172-17 | Net 30 | 12/30/2012 | 11/30/2012 | |

| Item Code | Description | Quantity | Price Each | Amount |
|-----------|-------------|----------|------------|--------|
| Engineering | Razorservers Statement of Work for Network Discovery<br>SoW / Quote 21172-17<br><br>Network Engineering<br>Discovery - T&M Engineering @ $2,000 / Day<br><br>Week-starting:<br>Nov 11: 10 hours<br>Total = 10 hours (1 day x $2000 = $2,000)<br>Philadelphia County, PA Sales Tax | 1 | 2,000.00<br><br>8.00% | 2,000.00<br><br>0.00 |

| Subtotal | | Total | $2,000.00 | Payments/Credits | $0.00 |
|----------|--|-------|-----------|------------------|------|

| Remit To:<br>**Torrey Point Group LLC**<br>**4811**<br>**PO BOX 894811**<br>**Los Angeles, CA 90189** | **Balance Due** | **$2,000.00** |
|---|---|---|

**Torrey Point Group LLC**
1390 Borregas Ave
Sunnyvale, CA 94089

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/1/2013 | 9377 |

888-700-5747        finance@torreypoint.com

| Bill To | Ship To |
|---------|---------|
| Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123 | Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123<br>John Zettlemoyer<br>484.245.5600 |

| P.O. Number | Terms | Due Date | Ship | Via |
|-------------|-------|----------|------|-----|
| 28226 | Net 30 | 1/31/2013 | 12/21/2012 | |

| Item Code | Description | Quantity | Price Each | Amount |
|-----------|-------------|----------|------------|--------|
| Juniper Networks | SRX220H<br>SRX services gateway 220 with 8 x GE ports, 2xmini-PIM slots, and high memory (1GB RAM, 1GB FLASH). External power supply and cord included. | 1 | 874.76 | 874.76T |
| Juniper Networks | SRX-RAC-10-LTU<br>Dynamic VPN Service: 10 simultaneous users | 1 | 159.12 | 159.12T |
| Juniper Partner S... | PAR-ND-SRX240<br>NextDay Support for SRX220 | 1 | 152.72 | 152.72 |
| Thank you for yo... | Sales Tax | | 0.00% | 0.00<br>0.00 |

| Subtotal | | Total | $1,186.60 | Payments/Credits | $0.00 |
|----------|--|-------|-----------|------------------|-------|

**Remit To:**
**Torrey Point Group LLC**
**4811**
**PO BOX 894811**
**Los Angeles, CA 90189**

**Balance Due**    $1,186.60

**Torrey Point Group LLC**
1390 Borregas Ave
Sunnyvale, CA 94089

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/31/2013 | 9618 |

888-700-5747        finance@torreypoint.com

| Bill To | Ship To |
|---------|---------|
| John Zettlemoyer<br>Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123 | Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123<br>John Zettlemoyer<br>484.245.5600 |

| P.O. Number | Terms | Due Date | Ship | Via |
|-------------|-------|----------|------|-----|
| RS-TP-00010 | Net 90 | 5/1/2013 | 1/31/2013 | |

| Item Code | Description | Quantity | Price Each | Amount |
|-----------|-------------|----------|------------|--------|
| Engineering | Network Engineering | 5 | 2,000.00 | 10,000.00 |
| | Discovery - T&M Engineering<br>SoW/Quote: 21172-25<br>Project: Juniper_MX960 PS | | | |
| Thank you for yo... | | | 0.00 | 0.00 |
| | Sales Tax | | 0.00<br>0.00% | 0.00 |

| **Subtotal** | **Total** | $10,000.00 | **Payments/Credits** | $0.00 |
|--------------|-----------|------------|----------------------|-------|

| **Remit To:**<br>**Torrey Point Group LLC**<br>**4811**<br>**PO BOX 894811**<br>**Los Angeles, CA 90189** | **Balance Due** | $10,000.00 |
|---|---|---|

**Torrey Point Group LLC**

1390 Borregas Ave
Sunnyvale, CA 94089

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/31/2013 | 9621 |

888-700-5747          finance@torreypoint.com

| Bill To | Ship To |
|---------|---------|
| Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123 | Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123<br>John Zettlemoyer<br>484.245.5600 |

| P.O. Number | Terms | Due Date | Ship | Via |
|-------------|-------|----------|------|-----|
| RS-TP-00010 | Net 30 | 3/2/2013 | 1/31/2013 | |

| Item Code | Description | Quantity | Price Each | Amount |
|-----------|-------------|----------|------------|--------|
| Juniper Networks | QFX3500-48S4Q-AFO<br>QFX3500, 48 SFP+SFP and 4 QSFP Ports,<br>Redundant Fan Trays, Port Side to FRU Side Air Flow<br>(Note: Management module, power supplies are extra) | 2 | 10,150.00 | 20,300.00T |
| Juniper Networks | CBL-EX-PWR-C13-US<br>Power Cable, US | 4 | 17.50 | 70.00T |
| Juniper Networks | QFX3500-MB-SFP-AFO<br>Management Board with SFP Interface for<br>QFX3500-48S4Q (Port Side to FRU Side Air Flow),<br>Spares, QFX | 2 | 700.00 | 1,400.00T |
| Juniper Networks | JPSU-650W-AC-AFO<br>Juniper 650W AC Power Supply (Port Side to FRU<br>Side Air Flow) | 4 | 525.00 | 2,100.00T |
| Juniper Networks | EX-SFP-1GE-SX+-SO<br>Juniper SFP 1000Base-SX Gigabit Ethernet Optic<br>Module with DOM, Solid Optics ** AKA<br>QFX-SFP-1GE-SX ** | 40 | 27.00 | 1,080.00T |
| Juniper Networks | EX-SFP-10GE-SR+-SO<br>Juniper Coded,10-Gigabit Ethernet Transceiver<br>Modules, Solid Optics ** AKA QFX-SFP-10GE-USR ** | 4 | 157.00 | 628.00T |

| Subtotal | Total | Payments/Credits |
|----------|-------|------------------|

| Remit To:<br>**Torrey Point Group LLC**<br>**4811**<br>**PO BOX 894811**<br>**Los Angeles, CA 90189** | **Balance Due** |
|---|---|

# Torrey Point Group LLC

1390 Borregas Ave
Sunnyvale, CA 94089

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/31/2013 | 9621 |

888-700-5747          finance@torreypoint.com

| Bill To | Ship To |
|---------|---------|
| Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123 | Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123<br>John Zettlemoyer<br>484.245.5600 |

| P.O. Number | Terms | Due Date | Ship | Via |
|-------------|-------|----------|------|-----|
| RS-TP-00010 | Net 30 | 3/2/2013 | 1/31/2013 | |

| Item Code | Description | Quantity | Price Each | Amount |
|-----------|-------------|----------|------------|--------|
| Juniper Networks | MX960BASE-AC<br>MX960 AC Base Unit includes 14 Slot Chassis, 2 Fan Trays, 3 AC Power Supplies, 2 SCB's, 1 RE | 2 | 23,800.00 | 47,600.00T |
| Juniper Networks | JUNOS-64<br>JUNOS 64-Bit, Internet Software Domestic Version, JCS | 2 | 3,500.00 | 7,000.00T |
| Juniper Networks | PWR-MX960-AC-BB<br>MX960 AC Power Entry Module, Base Bundle | 6 | 0.00 | 0.00T |
| Juniper Networks | FFANTRAY-MX960-HC-BB<br>MX960 High Capacity Fantray, Base Bundle | 4 | 0.00 | 0.00T |
| Juniper Networks | RE-S-1800X4-8G-UPG-BB<br>Routing Engine, Quad Core 1800Ghz with 8G Memory, Upgrade for Base Bundle, MX series | 2 | 2,100.00 | 4,200.00T |
| Juniper Networks | SCBE-MX-BB<br>MX-series Enhanced Switch Control Board, Base Bundle, Oceanus, MX960 | 4 | 3,500.00 | 14,000.00T |
| Juniper Networks | FFILTER-MX960-HC-BB<br>MX960 Filter Tray for High Capacity Fantray, Base Bundle | 2 | 0.00 | 0.00T |

| Subtotal | Total | Payments/Credits |
|----------|-------|------------------|

| Remit To:<br>**Torrey Point Group LLC**<br>**4811**<br>**PO BOX 894811**<br>**Los Angeles, CA 90189** | | **Balance Due** |

**Torrey Point Group LLC**
1390 Borregas Ave
Sunnyvale, CA 94089

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/31/2013 | 9621 |

888-700-5747        finance@torreypoint.com

| Bill To | Ship To |
|---------|---------|
| Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123 | Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123<br>John Zettlemoyer<br>484.245.5600 |

| P.O. Number | Terms | Due Date | Ship | Via |
|-------------|-------|----------|------|-----|
| RS-TP-00010 | Net 30 | 3/2/2013 | 1/31/2013 | |

| Item Code | Description | Quantity | Price Each | Amount |
|-----------|-------------|----------|-----------|--------|
| Juniper Networks | MX-MPC2-3D-R-B<br>MPC with 2xTrio, Advanced Scale Route and L3 VPN, Bundle, (Includes MX-MPC2-3D, S-MPC-3D-PQ-ADV-R) MX Series | 2 | 28,000.00 | 56,000.00T |
| Juniper Networks | MIC-3D-4XGE-XFP<br>4x10G, 1/2 Height MIC (Requires Optics) Neo, MX960 | 2 | 7,875.00 | 15,750.00T |
| Juniper Networks | MIC-3D-4XGE-XFP<br>4x10G, 1/2 Height MIC (Requires Optics) Neo, MX960 | 2 | 7,875.00 | 15,750.00T |
| Juniper Networks | EX-XFP-10GE-LR-SO<br>XFP 10GBASE-LR; LC connector; 1310nm; 10km reach on single-mode fiber, with DOM, Solid-Optics **AKA XFP-10G-L-OC192-SR1 *** | 4 | 356.00 | 1,424.00T |
| Juniper Networks | EX-XFP-10GE-SR-SO<br>"XFP 10GBASE-SR; LC connector; 850nm; 300m reach on 50 microns multimode fiber; with DOM, Solid-Optics ** XFP-10G-S **" | 14 | 200.00 | 2,800.00T |
| Juniper Partner S... | PAR-ND-QFX3500-ACR<br>Operate Specialist Next Day Support for QFX3500, 48 SFP+/SFP and 4 QSFP ports | 2 | 1,330.00 | 2,660.00 |
| Juniper Partner S... | PAR-ND-MX-MPC2-3D-B<br>Operate Specialist NextDay Support for MX-MPC2-3D-B & MPC2E-3D-B & MPC2E-3D-P-R-B | 2 | 2,810.00 | 5,620.00 |

| Subtotal | Total | | Payments/Credits |
|----------|-------|--|------------------|

| Remit To:<br>**Torrey Point Group LLC**<br>**4811**<br>**PO BOX 894811**<br>**Los Angeles, CA 90189** | | **Balance Due** |
|--|--|--|

**Torrey Point Group LLC**

1390 Borregas Ave
Sunnyvale, CA 94089

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/31/2013 | 9621 |

888-700-5747        finance@torreypoint.com

| Bill To | Ship To |
|---------|---------|
| Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123 | Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123<br>John Zettlemoyer<br>484.245.5600 |

| P.O. Number | Terms | Due Date | Ship | Via |
|-------------|-------|----------|------|-----|
| RS-TP-00010 | Net 30 | 3/2/2013 | 1/31/2013 | |

| Item Code | Description | Quantity | Price Each | Amount |
|-----------|-------------|----------|------------|--------|
| Juniper Partner S... | PAR-ND-MX960<br>Operate Specialist NextDay Support for MX960<br>Chassis (includes RE/SCB/PWR/JUNOS) | 2 | 4,300.00 | 8,600.00 |
| Thank you for yo... | | | | 0.00 |
| | Sales Tax | | 0.00% | 0.00 |

| Subtotal | Total | $206,982.00 | Payments/Credits | $0.00 |
|----------|-------|-------------|------------------|-------|

| Remit To:<br>**Torrey Point Group LLC**<br>**4811**<br>**PO BOX 894811**<br>**Los Angeles, CA 90189** | **Balance Due** | **$206,982.00** |
|---|---|---|

# Torrey Point Group LLC

1390 Borregas Ave
Sunnyvale, CA 94089

# Invoice

| Date | Invoice # |
|---|---|
| 3/18/2013 | 9855 |

888-700-5747        finance@torreypoint.com

| Bill To | Ship To |
|---|---|
| Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123 | Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123<br>John Zettlemoyer<br>484.245.5600 |

| P.O. Number | Terms | Due Date | Ship | Via |
|---|---|---|---|---|
| Q33417 | Net 30 | 4/17/2013 | 3/14/2013 | Overnight |

| Item Code | Description | Quantity | Price Each | Amount |
|---|---|---|---|---|
| Juniper Networks | SRX240H2<br>SRX services gateway 240 with 16 x GE ports, 4xmini-PIM slots, and high memory (2 GB DRAM, 2 GB FLASH). Integrated power supply with power cord. 19" Rack mount kit incl. | 1 | 1,479.60 | 1,479.60T |
| Juniper Networks | SRX220-RMK<br>SRX220 Rack mount kit for 19" rack. Holds one unit. | 2 | 60.00 | 120.00T |
| Juniper Networks | QFX-SFP-1GE-T-SO<br>SFP 1000Base-T Copper Transceiver Module for up to 100m transmission on Cat5, 3RD Party | 2 | 45.00 | 90.00T |
| Juniper Networks | EX-SFP-10GE-SR-SO<br>SFP+ 10G Base-SR, 850nm, LC Connectors, 300m over Multi Mode, Juniper compatable, 3rd party | 6 | 157.00 | 942.00T |
| Juniper Partner S... | PAR-ND-SRX240<br>Operate Specialist, Annual Next Day Support For SRX240 | 1 | 230.00 | 230.00 |
| Thank you for yo... | | | 0.00 | 0.00 |
| Freight | Shipping & Insurance | | 123.00 | 123.00 |
| | Sales Tax | | 0.00% | 0.00 |

| Subtotal | Total | $2,984.60 | Payments/Credits | $0.00 |
|---|---|---|---|---|

| Remit To:<br>**Torrey Point Group LLC**<br>**4811**<br>**PO BOX 894811**<br>**Los Angeles, CA 90189** | **Balance Due** | $2,984.60 |
|---|---|---|

**Torrey Point Group LLC**
1390 Borregas Ave
Sunnyvale, CA 94089

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/31/2013 | 9956 |

888-700-5747          finance@torreypoint.com

| Bill To | Ship To |
|---------|---------|
| John Zettlemoyer<br>Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123 | Razor Servers<br>1309 Nobel Street<br>Philadelphia, PA 19123<br>John Zettlemoyer<br>484.245.5600 |

| P.O. Number | Terms | Due Date | Ship | Via |
|-------------|-------|----------|------|-----|
| Q21172-17 | Net 45 | 5/15/2013 | 3/31/2013 | |

| Item Code | Description | Quantity | Price Each | Amount |
|-----------|-------------|----------|------------|--------|
| Reimbursement-... | Razor Servers<br>SoW/Quote: Juniper PS Q21172-17<br>Reimbursable Travel Expenses<br><br>Mileage - Jeff Fry, week of March 4, 2013 | 1 | 39.98 | 39.98 |
| Reimbursement-... | Mileage - Jeff Fry, week of March 4, 2013 | 1 | 39.85 | 39.85 |
| Reimbursement-... | Toll - Jeff Fry, week of March 4, 2013 | 1 | 6.08 | 6.08 |
| Reimbursement-... | Airfare - Peter Southwick, week of March 11, 2013 | 1 | 1,393.30 | 1,393.30 |
| Reimbursement-... | Hotel - Peter Southwick, week of March 11, 2013 | 1 | 264.34 | 264.34 |
| Reimbursement-... | Meals- Peter Southwick, week of March 11, 2013 | 1 | 97.66 | 97.66 |
| Reimbursement-... | Taxi - Peter Southwick, week of March 11, 2013 | 1 | 67.00 | 67.00 |
| | Thank you for yo... | | | 0.00 |
| | Sales Tax | | 0.00% | 0.00 |

| Subtotal | | Total | $1,908.21 | Payments/Credits | $0.00 |
|----------|--|-------|-----------|------------------|-------|

| Remit To:<br>**Torrey Point Group LLC**<br>**4811**<br>**PO BOX 894811**<br>**Los Angeles, CA 90189** | **Balance Due** | **$1,908.21** |
|---|---|---|